Wayne O. Stacy (SBN: 314579)
Sarah J. Guske (SBN: 232467)
Peter K. Huston (SBN: 150058)
Tina V. Ngo (SBN: 324102)
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Plaintiff*
LAFONZO R. TURNER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAFONZO R. TURNER,<br><br>          Plaintiff,<br><br>     vs.<br><br>A. GAFFNEY, in his individual capacity; A. JUNES, in his individual capacity; D. LEWIS, in his individual capacity; J. COLEMAN, in his individual capacity; D. TAYLOR, in his individual capacity; and DOES 1 THROUGH 10, INCLUSIVE,<br><br>          Defendants. | Case No. 2:19-cv-03081-MWF-JPR<br><br>**SECOND AMENDED COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983**<br><br>**JURY TRIAL DEMANDED** |

BAKER BOTTS L.L.P.

Plaintiff Lafonzo R. Turner ("Plaintiff" or "Mr. Turner") brings this action for damages and other appropriate relief under the federal civil rights laws against Defendants A. Gaffney, A. Junes, D. Lewis, J. Coleman, D. Taylor, and Does 1 through 10, inclusive (all defendants collectively, "Defendants"). Plaintiff states and alleges as follows:

## INTRODUCTION

1. This Complaint describes the vicious beating of Mr. Turner at the hands of California Correctional Officers in retaliation for Mr. Turner 1) seeking the assistance of his counsel to enforce the Court's prior settlement order, 2) exercising his federally protected Constitutional rights, and 3) using the prison's grievance system. The attacks left Mr. Turner bloodied, unconscious, in need of emergency medical care, and in need of reconstructive surgery to his face and skull, including installation of metal plates in his eyebrow, cheekbone, and nose. In addition to the significant lasting physical effects of the assaults, he is plagued by significant mental and emotional damage. This Complaint describes how Defendants abused their power and violated the law in an attempt to silence Mr. Turner and chill the exercise of his rights.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiff's claims arising under 42 U.S.C. § 1983 and pursuant to 28 U.S.C. §§ 1331 and 1343. This Complaint seeks damages for violations of the civil rights privileges and immunities guaranteed by the First, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988.

3. The Central District of California is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

4. Plaintiff Lafonzo R. Turner was at all relevant times an inmate in the

Baker Botts L.L.P.

custody of the California Department of Corrections and Rehabilitation ("CDCR"). At the time of the events described herein, Mr. Turner was incarcerated at the California State Prison, Los Angeles County ("CSP Lancaster") in Lancaster, California. Since 1995, Mr. Turner has suffered from a spinal injury partially paralyzing him from the waist down. At all relevant times, Mr. Turner has required the use of mobility aids, including an ankle foot orthosis brace, orthopedic shoes, and a four-legged walker for stability.[1]

5. Defendant A. Gaffney ("Lt. Gaffney") was at the time of the events described herein employed by the CDCR as a lieutenant at CSP Lancaster. Gaffney is sued in his individual capacity in this action.

6. Defendant A. Junes ("Officer Junes") was at the time of the events described herein employed by the CDCR as a correctional officer at CSP Lancaster. Junes is sued in his individual capacity in this action.

7. Defendant D. Lewis ("Officer Lewis") was at the time of the events described herein employed by the CDCR as a correctional officer at CSP Lancaster. Lewis is sued in his individual capacity in this action.

8. Defendant J. Coleman ("Officer Coleman") was at the time of the events described herein employed by the CDCR as a correctional officer at CSP Lancaster. Coleman is sued in his individual capacity in this action.

9. Defendant D. Taylor ("Officer Taylor") was at the time of the events described herein employed by the CDCR as a correctional officer at CSP Lancaster. Taylor is sued in his individual capacity in this action.

10. Plaintiff is informed and believes, and thereon alleges, that at all times relevant to the events or omissions giving rise to the claims, Does 1 through 10, and each of them, were employees of CDCR, whose actions and inactions caused or contributed to the violations of Plaintiff's civil rights claimed herein. The true

---

[1] Mr. Turner was also prescribed a cane for walking but fell several times while using it. He preferred and primarily relied on his four-legged walker.

names and capacities of Does 1 through 10, and each of them, are not known to Plaintiff, who therefore sues said Defendants by fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when the same have been ascertained.

11.   Plaintiff is informed and believes, and thereon alleges, that at all times relevant to the events or omissions giving rise to the claims, each of the Defendants was the agent and/or co-conspirator of each of the remaining Defendants, and in doing the things claimed herein, was acting within the scope of such agency and/or conspiracy and with the permission and consent of other codefendants.

12.   Whenever and wherever reference is made in this Complaint to any act by Defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly, or severally.

13.   At all times relevant to the events or omissions giving rise to the claims, Defendants were acting within the scope of their employment as employees of CDCR and acting under color of state and municipal law.

## FACTS COMMON TO ALL CLAIMS

**A.   Mr. Turner and His Relationship with CSP Lancaster Staff**

14.   Mr. Turner is a 46-year old paraplegic man. In 1995, Mr. Turner suffered a gunshot injury to his thoracic T3 vertebra, leaving him partially paralyzed from the waist down. He experiences chronic pain as a result of his condition. Prior to the assaults alleged herein, Mr. Turner was able to walk with the assistance of mobility aids, including an ankle foot orthosis brace, orthopedic shoes, and a four-legged walker for stability.

15.   Mr. Turner has been incarcerated in the California state prison system since 2000. He was housed as an inmate at CSP Lancaster from approximately 2008 to 2012 and again from 2017 to 2018.

16.   Mr. Turner used CDCR's formal grievance system on multiple

occasions.[2]  In 2018, he filed at least thirteen grievances against CSP Lancaster staff. These grievances ranged from complaints about the staff to complaints about his living conditions, personal property, funds, and disciplinary actions taken against him.

17.  Mr. Turner has filed several lawsuits against various correctional institutions and their staff members.[3]  Two such lawsuits were brought against correctional officers and medical staff at CSP Lancaster alleging civil rights violations.[4]  Both lawsuits settled, with CDCR making monetary payments among other things.

18.  In 2013, Mr. Turner was involved in an altercation with a correctional officer at the California State Prison, Sacramento resulting in several years being added to his sentence.

19.  After a reasonable opportunity for further investigation or discovery, it will be shown that, at the time of the events described herein, Defendants were aware of Mr. Turner's contentious relationship with, and history of filing grievances and bringing lawsuits against CDCR staff.  It will also be shown that Mr. Turner had developed a reputation at CSP Lancaster as a litigious and problematic inmate.

**B.   Issues with the Enforcement of the 2018 Settlement Agreement**

---

[2] A prisoner can file an administrative appeal (often referred to as a "602" due to use of the Form 602) to complain about an action taken by any employee of the CDCR or any CDCR policy, procedure, or condition that affects them. The 602 administrative appeal procedure consists of an informal level of review followed by three formal levels of review. A prisoner can also file a Form 22 to ask a staff member questions, request an interview with a staff member, and/or ask a staff member to do or stop doing something.

[3] *Lafonzo Turner v. Sacramento County Jail*, No. 09-cv-00117-WBS-KJN (E.D. Cal. 2009); *Lafonzo Turner v. A. Woods, et al.*, No. 12-cv-05962-MMM-AGR (C.D. Cal. 2012); *Lafonzo Turner v. Lewis, et al.*, No. 15-cv-00078-KAW (N.D. Cal. 2015); *Lafonzo Turner v. M. Cates, et al.*, No. 15-cv-03067-KAW (N.D. Cal. 2015).

[4] *Lafonzo Turner v. A. Woods, et al.*, No. 12-cv-05962-MMM-AGR (C.D. Cal. 2012); *Lafonzo Turner v. M. Cates, et al.*, No. 15-cv-03067-KAW (N.D. Cal. 2015).

20. In November 2017, through the Federal Pro Bono Project, the undersigned counsel ("counsel") was appointed by the Honorable Kandis A. Westmore of the Northern District of California to represent Mr. Turner in connection with his lawsuit captioned *Turner v. Cates*.[5]

21. Mr. Turner brought the suit pro se against medical staff at CSP Lancaster and Pelican Bay State Prison, alleging that he was denied adequate medical care at both institutions. Mr. Turner alleged that he was denied prescription pain medication, a lower bunk chrono[6], and a chrono for orthopedic shoes despite his numerous requests and despite medical staff's awareness of his condition.

22. With counsel's assistance, through a mediation presided over by the Honorable Robert M. Illman of the Northern District of California, Mr. Turner reached a settlement agreement (the "Agreement") with CDCR on April 2, 2018 for both monetary relief and administrative reforms. The Agreement provided, among other things, that "[s]ubject to CDCR's security screening, Plaintiff will receive a permanent chrono that a left ankle fixation device may be sent from home with shoes to correct ambulation."

23. Despite the Agreement, for over three months CSP Lancaster staff failed to provide Mr. Turner his shoes even though the shoes were in the staff's possession. Mr. Turner repeatedly asked staff about his shoes, only to be told that they were pending approval.

24. Upon counsel's request, Judge Illman held a status conference on June 5, 2018 concerning CDCR's failure to comply with the nonmonetary provisions of

---

[5] *Lafonzo Turner v. M. Cates, et al.*, No. 15-cv-03067-KAW (N.D. Cal. 2015).

[6] Chronos are small slips of paper generated by prison staff to be carried by an inmate. Chronos may also take the form of white wristbands to be worn by an inmate. Chronos outline approved movements and programs, and act to excuse an inmate from certain activities such as work. Chronos are generally available to prisoners who show need for accommodation. A lower bunk chrono would specify that an inmate must be assigned to sleep on a lower bunk.

BAKER BOTTS L.L.P.

the Agreement. Judge Illman held a second status conference on June 22, 2018. Following these status conferences, CSP Lancaster staff continued to deny Mr. Turner his shoes.

25. On or around July 9, 2018, Mr. Turner asked Defendant A. Gaffney ("Lt. Gaffney") about the status of his shoes. Lt. Gaffney stated that he would not provide the shoes unless Mr. Turner dropped the grievances he had filed against certain staff members.

26. On July 9, 2018, counsel sent a letter to Deputy Attorneys Generals ("Deputy AG") William Kwong and Jeffrey Fisher expressing concern that CDCR was interfering with the Agreement in bad faith and urging another status conference.[7]

27. Counsel's July 9, 2018 letter specifically addressed Lt. Gaffney's ultimatum that Mr. Turner drop his grievances against certain staff members if he wanted his shoes.

28. On July 12, 2018, Deputy AG Fisher sent counsel an email with an attached letter indicating that he had communicated with CDCR staff about the issues counsel's letter raised.[8]

29. After a reasonable opportunity for further investigation or discovery, it will be shown that Deputy AG Fisher's communications regarding Lt. Gaffney's improper ultimatum were made directly to, or passed on to Lt. Gaffney on the morning of July 12, 2018.

**C. Retaliatory Assaults on July 12, 2018**

30. On July 12, 2018, at approximately 9:30 a.m., Mr. Turner was ordered to report to Lt. Gaffney's office. He was escorted by correctional officer Anglin. Upon arrival, Lt. Gaffney questioned Mr. Turner about his knowledge of another inmate's formal grievance concerning staff misconduct. Mr. Turner stated that he

---

[7] *See* Exhibit 1.
[8] *See* Exhibits 2 and 3.

SAC FOR VIOLATION OF CIVIL RIGHTS
UNDER 42 U.S.C. § 1983                    6

had no knowledge of the events leading up to the other inmate's grievance. Lt. Gaffney thereupon told Mr. Turner he could return to his cell.

31. Before exiting the office, Mr. Turner asked Lt. Gaffney about his shoes, which he had not received. In response, Lt. Gaffney stated, "It's out of my hands, since you got your attorney involved." Lt. Gaffney said that the shoes were being screened by other staff members and that he had "nothing else to do with it."

32. A correctional officer began escorting Mr. Turner to his cell. Mr. Turner asked for, and was granted, permission to use the telephone in the "A" section dayroom of Facility D, Building 2. Mr. Turner spoke on the phone for about ten minutes, during which time he began experiencing difficulty breathing due to smoke from an electrical fire inside the building.

33. At approximately 9:57 a.m., correctional officer Arroyo, who sat in the building control tower watching over the dayroom, ordered Mr. Turner to return to his cell. Mr. Turner explained that he was having trouble breathing and requested permission to step outside for air.

34. Defendant A. Junes ("Officer Junes") approached Mr. Turner and ordered him to return to his cell. Mr. Turner again requested permission to step outside for air. Officer Junes became agitated and ordered Mr. Turner to submit to handcuffs. Mr. Turner let go of his walker, turned around, and placed his hands behind his back. Officer Junes handcuffed Mr. Turner and began pulling him toward his cell. Without the use of his walker, Mr. Turner lost his balance and began to fall.

35. As Mr. Turner fell, Officer Junes held onto him and began punching the side of his face. Defendant D. Lewis ("Officer Lewis") ran over and tackled Mr. Turner to the ground. Both correctional officers descended upon Mr. Turner, delivering blows to his face and body with their fists and knees. Defendants J. Coleman ("Officer Coleman") and D. Taylor ("Officer Taylor") came over and joined Officers Junes and Lewis in punching and kicking Mr. Turner while he was on the ground. During the assault, Mr. Turner's handcuffs were so tight that he lost

feeling in both hands.

36. Officer Miranda appeared and placed Mr. Turner in leg restraints. Officers Coleman and Taylor proceeded to pull/drag Mr. Turner out of the building and across the yard. They placed Mr. Turner in a holding cell in the Facility D gymnasium.

37. About twenty minutes later, Lt. Gaffney approached Mr. Turner's holding cell and asked how he was doing. Mr. Turner replied, "How do you think I'm doing?" to which Lt. Gaffney stated, **"You're lucky you still have all your teeth and you're still breathing. After you called your attorney on me, I told my staff to have zero tolerance for your bullshit."** Mr. Turner responded that this was retaliation and that they should have killed him. Lt. Gaffney stated, **"Oh, you'll get yours in 45 minutes, asshole"** and left.

38. Mr. Turner asked for permission to use the bathroom shortly after. Officers Coleman and Taylor ignored his requests. Mr. Turner soiled himself and alerted the officers. Officers Coleman and Taylor laughed, with one of them saying, **"You're just scared as shit because you know what's coming."**

39. At approximately 1:25 p.m., Officers Coleman and Taylor placed Mr. Turner in waist restraints and removed him from the holding cell. Sergeant Y. Sanchez was also present and ordered Officers Coleman and Taylor to give Mr. Turner his cane instead of his walker. As they escorted him out of Facility D gymnasium toward housing unit D-5 for administrative segregation, Officers Coleman and Taylor stood on either side of Mr. Turner, holding onto his arms. Sergeant Sanchez walked behind them pushing Mr. Turner's walker.

40. About fifteen feet into the yard, Officer Coleman pulled on Mr. Turner's arm such that his cane could not touch the ground. Officers Coleman and Taylor swiped Mr. Turner's feet out from under him while forcefully pushing him toward the ground. Mr. Turner fell face-first into the ground, shattering the left side of his skull. Mr. Turner lost consciousness. When he came to, both officers had

descended upon him, placing their full body weight on him while shouting at him to stop resisting.

41. After a reasonable opportunity for further investigation or discovery, it will be shown that, as to the beatings on July 12, 2018, Officers Junes, Lewis, Coleman, and Taylor were acting at the direction of Lt. Gaffney.

**D. Aftermath of the Assaults**

42. Mr. Turner was taken from the scene in a wheelchair. He had facial swelling and was bleeding profusely. Mr. Turner was transported by ambulance to Antelope Valley Hospital for emergency care.

43. At Antelope Valley Hospital, Mr. Turner was diagnosed with a traumatic brain injury, left epidural and subdural hematomas, and multiple fractures to the left side of his skull, eye socket, cheek bone, nasal bone and septum. These injuries were confirmed by multiple CT and MRI scans.

44. On July 18, 2018, Mr. Turner underwent facial reconstructive surgery. Three metal plates were surgically installed in his eyebrow, cheekbone, and nose. In addition to the plates, reconstruction of the left side of his face and skull required ten stitches on the inside of his mouth, seven stitches in his eyebrow, four stitches in his ear, and four staples in his temple.

45. On July 20, 2018, Mr. Turner was discharged from Antelope Valley Hospital and transferred to California State Prison, Corcoran ("CSP Corcoran"). He remained in the hospital ward of CSP Corcoran for six and a half months.

46. Since the assaults, Mr. Turner has lost strength in his legs and has been confined to a wheelchair. He suffers from rectal and urinary incontinence and requires an incontinence pad at all times. He experiences frequent migraines, confusion, facial numbness, difficulty chewing and swallowing, and trouble sleeping. He has reduced vision capabilities in his left eye. The chronic pain resulting from the beating is worsening. Mr. Turner's condition substantially limits his ability to engage in everyday activities.

47. Mr. Turner is experiencing ongoing anxiety, depression, and suicidal thoughts as a result of the assaults. He is fearful that he will be attacked again or otherwise retaliated against for filing grievances against CDCR staff or for seeking the assistance of his attorney. He has also experienced shame, embarrassment, and loss of dignity.

48. Mr. Turner is fearful of being housed at CSP Lancaster because he believes he will be retaliated against or killed. Mr. Turner is currently housed for treatment at the California Health Care Facility ("CHCF"), which is not available as permanent housing for Level 4 inmates such as Mr. Turner. Additionally, Mr. Turner was transferred to CHCF on a "treat and return" basis. Counsel for Mr. Turner has asked for assurances from CDCR staff and counsel for Defendants that Mr. Turner will not be returned to CSP Lancaster. Neither counsel nor staff would provide such assurances.

49. CSP Lancaster's medical facilities and housing for Level 4 inmates make it a highly likely place to which Mr. Turner will return, for either treatment or long-term housing. While at CSP Lancaster, it is likely that Mr. Turner will come into contact with at least one of the named Defendants. Mr. Turner was in fact returned to CSP Lancaster after the July 12, 2018 assaults for approximately one month. He was placed in the care of at least one of the named Defendants during his stay.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 – Retaliation for Filing Grievances Against CDCR Staff**

**Against All Named Defendants and Does 1-10, Inclusive**

50. Plaintiff re-alleges and incorporates by reference Paragraphs 1-49 of this Complaint as though fully set forth herein.

51. This action is brought under Title 42 U.S.C. § 1983 and under the First and Fourteenth Amendments of the United States Constitution.

52. The actions of Defendants set forth above were intended to retaliate

against and punish Mr. Turner for exercising his right to petition the government for a redress of grievances. Such conduct violated Mr. Turner's right of free speech as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

53. Because of Mr. Turner's use of CDCR's grievance system and the court system, Defendants retaliated against Mr. Turner using threat, intimidation, and force. By stating that he would not provide Mr. Turner his shoes unless Mr. Turner dropped the grievances he had filed against certain staff members, Lt. Gaffney was chilling Mr. Turner's exercise of his First Amendment rights. By ordering his staff "to have zero tolerance for [Mr. Turner's] bullshit" after Mr. Turner told his counsel about the ultimatum, Lt. Gaffney was chilling Mr. Turner's exercise of his First Amendment rights. By assaulting Mr. Turner, Defendants were chilling Mr. Turner's exercise of his First Amendment rights.

54. Does 1-10, and each of them, failed and refused to intervene or prevent or try to prevent Defendants' assaults on Mr. Turner. By failing to do so, Does 1-10 ratified and condoned Defendants' wrongful conduct.

55. Defendants' threats and assaults on July 12, 2018 against Mr. Turner did not reasonably advance a legitimate correctional goal. Rather, Defendants acted with the intent to chill Mr. Turner's exercise of his First Amendment rights.

56. Defendants' threats and assaults would have deterred a person of ordinary firmness from continuing to engage in the protected conduct.

57. Mr. Turner in fact experienced a chilling effect on his First Amendment rights. Since the assaults, he has experienced emotional distress, anxiety, depression, and suicidal thoughts. Mr. Turner is fearful of being attacked again or otherwise retaliated against for filing grievances against CDCR staff members.

58. Currently, Mr. Turner is temporarily housed at CHCF while he receives medical treatment. After a reasonable opportunity for further investigation or discovery, it will be shown that, due to various factors including his medical

condition, Mr. Turner will likely be transferred back to CSP Lancaster.

59. If transferred to CSP Lancaster—where he is directly exposed to the authority of Lieutenant Gaffney—Mr. Turner's fear of further retaliation by Defendants will be heightened. This fear will have a chilling effect on Mr. Turner's exercise of his First Amendment rights. For whatever period Mr. Turner is housed at CSP Lancaster, he will suffer this chilling effect on an ongoing basis.

60. Defendants' wrongful conduct caused deprivations of Mr. Turner's rights and caused Mr. Turner's injuries and damages as set forth above. The wrongful conduct of these Defendants legally caused Mr. Turner general and special damages as allowable pursuant to federal law in an amount according to proof.

61. The conduct of Defendants was motivated by evil intent and involved reckless or callous indifference to Mr. Turner's federally protected rights. As a result, punitive damages should be assessed against these Defendants.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 – Retaliation for Communicating with Attorney**

**Against All Named Defendants and Does 1-10, Inclusive**

62. Plaintiff re-alleges and incorporates by reference Paragraphs 1-61 of this Complaint as though fully set forth herein.

63. This action is brought under Title 42 U.S.C. § 1983 and under the First and Fourteenth Amendments of the United States Constitution.

64. The actions of Defendants set forth above were intended to retaliate against and punish Mr. Turner for exercising his right to petition the government for a redress of grievances through his attorney. Such conduct violated Mr. Turner's right of free speech as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

65. Because Mr. Turner spoke with his attorney about CDCR's failure to comply with the Agreement and Lt. Gaffney's ultimatum, causing his attorney to reach out to the Deputy AG about CDCR's noncompliance, Defendants retaliated

SAC FOR VIOLATION OF CIVIL RIGHTS
UNDER 42 U.S.C. § 1983                      12

against Mr. Turner using threat, intimidation, and force. By stating "It's out of my hands, since you got your attorney involved," and "After you called your attorney on me, I told my staff to have zero tolerance for your bullshit," Lt. Gaffney was chilling Mr. Turner's exercise of his First Amendment rights through his attorney. By assaulting Mr. Turner, Defendants were chilling Mr. Turner's exercise of his First Amendment rights through his attorney.

66. Does 1-10, and each of them, failed and refused to intervene or prevent or try to prevent Defendants' assaults on Mr. Turner. By failing to do so, Does 1-10 ratified and condoned Defendants' wrongful conduct.

67. Defendants' threats and assaults on July 12, 2018 against Mr. Turner did not reasonably advance a legitimate correctional goal. Rather, Defendants acted with the intent to chill Mr. Turner's exercise of his First Amendment rights through his attorney.

68. Defendants' threats and assaults would have deterred a person of ordinary firmness from continuing to engage in the protected conduct.

69. Mr. Turner in fact experienced a chilling effect on his First Amendment rights. Since the assaults, he has experienced emotional distress, anxiety, depression, and suicidal thoughts. Mr. Turner is fearful of being attacked again or otherwise retaliated against for seeking the assistance of his attorney.

70. Currently, Mr. Turner is temporarily housed at CHCF while he receives medical treatment. After a reasonable opportunity for further investigation or discovery, it will be shown that, due to various factors including his medical condition, Mr. Turner will likely be transferred back to CSP Lancaster.

71. If transferred to CSP Lancaster—where he is directly exposed to the authority of Lieutenant Gaffney—Mr. Turner's fear of further retaliation by Defendants will be heightened. This fear will have a chilling effect on Mr. Turner's exercise of his First Amendment rights. For whatever period Mr. Turner is housed at CSP Lancaster, he will suffer this chilling effect on an ongoing basis.

72. Defendants' wrongful conduct caused deprivations of Mr. Turner's rights and caused Mr. Turner's injuries and damages as set forth above. The wrongful conduct of these Defendants legally caused Mr. Turner general and special damages as allowable pursuant to federal law in an amount according to proof.

73. The conduct of Defendants was motivated by evil intent and involved reckless or callous indifference to Mr. Turner's federally protected rights. As a result, punitive damages should be assessed against these Defendants.

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 – Use of Excessive Force

### Against All Named Defendants and Does 1-10, Inclusive

74. Plaintiff re-alleges and incorporates by reference Paragraphs 1-73 of this Complaint as though fully set forth herein.

75. This action is brought under Title 42 U.S.C. § 1983 and under the Eighth and Fourteenth Amendments of the United States Constitution.

76. The use of excessive force by Officers Junes, Lewis, Coleman, and Taylor against Mr. Turner during the July 12, 2018 assaults was not a good faith effort to maintain or restore order. Rather, these Defendants applied force maliciously or sadistically for the very purpose of causing physical harm and depriving Mr. Turner of his rights.

77. Lt. Gaffney's direction to his subordinate officers—who, at the time of the events described herein, included Officers Junes, Lewis, Coleman, and Taylor— led to the constitutional violation Mr. Turner suffered at the hands of Officers Junes, Lewis, Coleman, and Taylor. Lt. Gaffney's direction to his subordinate officers was not a good faith effort to maintain or restore order. Rather, Lt. Gaffney gave the direction maliciously or sadistically for the very purpose of causing physical harm and depriving Mr. Turner of his rights.

78. Does 1-10, and each of them, failed and refused to intervene or prevent or try to prevent Defendants' use of excessive force when they witnessed

Defendants' assaults on Mr. Turner. By failing to do so, Does 1-10 ratified and condoned Defendants' wrongful conduct.

79. As a result of Defendants' use of excessive force, Mr. Turner suffered a traumatic brain injury and serious facial fractures. He required facial reconstructive surgery and had three metal plates installed in his face. He remained hospitalized for six and a half months and has permanently lost use of his legs, some vision in his left eye, and control of his bladder and bowels. He experiences chronic pain, frequent migraines, confusion, facial numbness, difficulty chewing and swallowing, and trouble sleeping. Mr. Turner's condition substantially limits his ability to engage in everyday activities. In addition, he experiences emotional distress, anxiety, depression, and suicidal thoughts. Mr. Turner is fearful of another attack for filing grievances against CDCR staff members or for seeking the assistance of his attorney.

80. Defendants' wrongful conduct caused deprivations of Mr. Turner's rights and caused Mr. Turner's injuries and damages as set forth above. The wrongful conduct of these Defendants legally caused Mr. Turner general and special damages as allowable pursuant to federal law in an amount according to proof.

81. The conduct of Defendants was motivated by evil intent and involved reckless or callous indifference to Mr. Turner's federally protected rights. As a result, punitive damages should be assessed against these Defendants.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for relief and judgment from this Court as to all defendants and each of them jointly and severally, as follows:

1. For compensatory, general and special damages against all Defendants in an amount to be proven at trial;

2. For punitive and exemplary damages against all Defendants;

3. For prejudgment interest;

4. For costs of suit and reasonable attorneys' fees and costs pursuant to

42 U.S.C. §12205, 29 U.S.C. §794a(b), 42 U.S.C. § 1988, and as otherwise authorized by statute or law;

    5. For restitution as the court deems just and proper;

    6. For any such further relief that the Court deems just.

Dated: October 8, 2019

By: /s/ *Wayne O. Stacy*
Wayne O. Stacy
Sarah J. Guske
Peter K. Huston
Tina V. Ngo
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Plaintiff*
*LAFONZO R. TURNER*

# CERTIFICATE OF SERVICE

I, Wayne O. Stacy, hereby certify that on October 8, 2019, I electronically filed **Plaintiff's Second Amended Complaint** with the U.S. District Court for the Central District of California by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

By: /s/ *Wayne O. Stacy*
Wayne O. Stacy
Sarah J. Guske
Peter K. Huston
Tina V. Ngo
BAKER BOTTS LLP
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone: (415) 291-6200
Facsimile: (415) 291-6300

*Attorneys for Plaintiff*
*LAFONZO R. TURNER*